FRANK A. MATHEWS, Jr., PLAINTIFF-APPELLANT, v. ROBERT L. FINLEY, DEPUTY STATE TREASURER, STATE OF NEW JERSEY, AND ABRAM M. VERMEULEN, DIRECTOR OF BUDGET AND ACCOUNTING, STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued August 5, 1957—Decided August 20, 1957.

Before Judges CLAPP, DAVIDSON and SULLIVAN.

*Mr. John B. Mathews* argued the cause for plaintiff-appellant.

*Mr. Christian Bollermann,* Deputy Attorney-General, argued the cause for defendants-respondents (*Mr. Grover C. Richman, Jr.,* Attorney-General).

The opinion of the court was delivered by

CLAPP, S. J. A. D. This action in lieu of prerogative writ was brought by the plaintiff in the Superior Court, Law Division, to compel the payment to himself of a pension of $6,000 a year under the Veterans Pension Act. *N. J. S. A.* 43 :4–1 to 43 :4–4. The Law Division dismissed his com-

plaint on the ground that it failed to state a claim upon which relief could be granted. He appeals.

On April 16, 1953 plaintiff, who had been a Deputy Attorney-General at a salary of $6,000 a year, was appointed Chief Condemnation Counsel for the New Jersey Highway Authority at a salary of $12,000 a year. He served in the latter capacity only a short time, but four months, when he was retired by the Authority upon his own request and upon an agreement on his part not to call upon it for a pension under the Veterans Pension Act. His claim was and is against the State, not the Authority; that is, it is against the State Treasury, not against Authority funds. The State rejected his claim for a pension of $6,000 a year; it has, however, paid him a pension of $3,000 a year under the act, basing it upon his former salary as Deputy Attorney-General.

It should be observed, in passing (though it is not a matter of any consequence now, *R. R.* 1:27*D*(*b*)), that the Law Division had no authority in the premises. To review the action or, plaintiff claims, inaction of the state officials or agencies involved, he should have taken an appeal therefrom directly to the Appellate Division under *R. R.* 4:88–8. The term "action," found in the rule, includes inaction. Over such matters the Appellate Division has exclusive cognizance.

We are confronted with questions of statutory construction. It might be noted that in plaintiff's opinion, in view of the passage of *N. J. S. A.* 43:15*A* since his retirement, there is little, if any, chance of similar questions arising or of new claims being advanced now under the Veterans Pension Act.

The first question before us is raised by the provisions of the act, which limit its benefits to those persons holding "office, position or employment *of* this State * * *" *etc.* (*N. J. S. A.* 43:4–2). Was the plaintiff, while with the Authority, such a person? The State contends he was not. It argues that the Authority is an autonomous body (a point with which we will have to deal somewhat herein) and that hence its employees are not "of" the State; thus, under the

Public Employees Retirement System set up in *N. J. S. A.* 43:15A, they are said not to have the status of state employees but are merely given the same benefits "as State employees" (*N. J. S. A.* 43:15A–73). Plaintiff, however, with much force invokes *N. J. S. A.* 38:23A–3. Under that statute "*any* rights, privileges or benefits" given to honorably discharged veterans by "*any* law" are conferred upon "all those engaged in the public service in any of its branches within this State," regardless of the source of the public funds from which they are paid. See, too, the introducer's statement to the bill enacted as *N. J. S. A.* 38:23A–3, in which the introducer asserts that the purpose of the bill is to make "veteran legislation" equally applicable to all veterans. Further, see *De Vita v. Housing Authority of the City of Paterson,* 17 *N. J.* 350, 359 (1955). However, in view of our conclusions on the second point, we need not deal with this one. We shall assume, in accordance with plaintiff's contention, that Highway Authority employees are entitled to a pension under the Veterans Pension Act.

That brings us to the second question, namely, whether such a pension (assuming it to be due) would be payable from the State Treasury, as plaintiff maintains, or only from Highway Authority funds, as the State maintains. Plaintiff has not made the Authority a defendant to this action, and he asserts categorically in his brief that he does not claim (or wish to claim) to have any right to a pension out of its funds. Our question, therefore, reduces itself to this: did the State intend to obligate itself and place defendants, the State Treasurer or the Director of Budget and Accounting, under a duty to pay out of the State Treasury this pension which we have assumed to be due the plaintiff?

As we understood plaintiff's position on the oral argument, he seems to have put forward two answers to this question. First, he claims that defendants are obligated to pay all salaries of Highway Authority employees and, generally, all expenses in connection with its operation, including therefore pensions under the Veterans Pension Act. Second, he

claims that defendants, regardless of this general obligation, are under a particular obligation to meet those pensions.

In connection with the first contention, it will be of some use if we look first at the nature of this body, corporate and politic, known as the New Jersey Highway Authority. In some ways it is comparable to a municipal corporation. *Cf. City of Newark v. New Jersey Turnpike Authority,* 7 *N. J.* 377, 381 (1951). Like other authorities established in this State, *cf. Camden County v. Pennsauken Sewerage Authority,* 15 *N. J.* 456, 465, 468 (1954), it is accorded a measure of autonomy; that is, it is independent of the State in certain respects and subordinate to it in other respects. *Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14, 29 (1953); *cf. New Jersey Turnpike Authority v. Parsons,* 3 *N. J.* 235, 243 (1949); *Town of Bloomfield v. New Jersey Highway Authority,* 18 *N. J.* 237, 244 (1955).

Its independence of the State is reflected in the act establishing it, under which it is expressly denied the power to receive appropriations by the Legislature. *N. J. S. A.* 27:12B–5(r). In that respect it is a "self-sufficient facility." *Cf. McCutcheon v. State Building Authority,* 13 *N. J.* 46, 62 (1953). As plaintiff admits, the Authority to date has never received an appropriation from the Legislature. Furthermore, *N. J. S. A.* 27:12B–11 indicates that it has the "rights * * * to establish and collect such tolls or other charges as may be convenient or necessary to produce sufficient revenues to meet the expenses of maintenance and operation" of any project.

Its subordination to the State is reflected in the fact, as stated in *Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14, 29 (1953), that "the highway and all [the Authority's] property are held for the State." Further, the Authority's bonds dealt with in that case are (plaintiff stresses this) "the State's own debt"—though perhaps they constitute but an unenforceable liability, except to the extent of the "State's undertaking" to satisfy "the bonds in the event the revenue from tolls and otherwise shall be insufficient for the purpose" (13 *N. J.* at *page* 29).

Plaintiff's first point, as above stated, that defendants are obligated to pay all salaries, pensions and expenses of the Authority, rests upon *Behnke;* these, he claims, are "the State's own debt." The Legislature has made explicit provision for the payment of the bonds mentioned. *L.* 1952, *c.* 17. But under *N. J. S. A.* 27:12B–5(*r*) there can be no appropriation of moneys from the State Treasury *to the Authority to be applied by it* to the payment of salaries, expenses and pensions of the Authority. And, so far as we have found, there has been no appropriation therefrom of moneys *to be applied directly by the State Treasurer himself* to the Authority personnel and others in payment of these items (we deal later with certain appropriations relative to pensions); and hence if, as plaintiff maintains, the State is obligated directly for these items, the obligation is unenforceable. "No money shall be drawn from the State treasury but for appropriations made by law." *N. J. Const. Art.* VIII, *Sec.* II, *par.* 2. The first argument, then, that defendants must pay the pensions because they are under a duty to pay all liabilities of the Authority, is without the slightest merit.

Plaintiff's second point is that, regardless of other liabilities of the Highway Authority, defendants must pay the pensions due under the Veterans Pension Act with respect to the Authority's employees. This argument that the Legislature intended to impose a special obligation upon the State Treasury with regard to pensions under the Veterans Pension Act, seems to rest upon *N. J. S. A.* 43:4–4. It provides:

"Provisions for all pensions arising under this article shall be made in the appropriation or tax levy for the department of the public service from which the person shall be retired."

In the appropriations act for the fiscal year in which plaintiff retired, we have found among the "Inter- and Non-Departmental Items" (*L.* 1953, *c.* 102, *p.* 1237), an appropriation as follows: "Amount required to pay pensions pursuant to various acts relative thereto \* \* \*. Veterans Act Pen-

sions ........ $275,000.00" (*Id., p.* 1239). Somewhat similar items appear in Appropriation Acts in certain subsequent years. *L.* 1955, *c.* 95, *p.* 504, *L.* 1956, *c.* 100, *p.* 430, *L.* 1957, *c.* 113, *cf. L.* 1954, *c.* 46, *p.* 347.

As it will be observed, *N. J. S. A.* 43:4–4 requires provision to be made for veterans' pensions through an "appropriation * * * for the department * * * from which the [veteran] shall be retired" (or at least through an appropriation for a number of departments and agencies so circumstanced, such as provided by the "inter- and non-departmental" appropriations above referred to). Plaintiff claims that in this context the word "department" means "state, county, municipality, board of education, *etc.*"; but that gives the whole clause a peculiar twist. As plaintiff reads it, it would run as follows: "Provisions for all pensions [for Highway Authority employees] shall be made" by the State "in the appropriation * * * *for* the" *State*. It seems fairly obvious that if we give the word "department" its natural significance, it will have reference, for instance, as stated in *Murphy v. Zink,* 136 *N. J. L.* 235, 246, *contra cf. page* 240 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 635 (*E. & A.* 1948), to "the Attorney General's office, or the Fish and Game Commission" (executive agencies, as they existed in 1947). It refers to the "body" or "board" from which a person is retired pursuant to *N. J. S. A.* 43:4–2. The term "department" is used again in *N. J. S. A.* 43:4–4: "No pension shall cease or become invalid by reason of the abolition of the department or office in which he served, or any change in its title." *Department* hardly signifies "State" here. As for the term "tax levy" appearing in this statute, it might be helpful to observe parenthetically that not only does it apply more appropriately to taxes exacted by a municipality or county than to those exacted by the State. *Murphy v. Zink, supra,* 136 *N. J. L.* at *page* 246. But more than that, the clause, though it is not happily drawn insofar as it compels a "tax levy *for*" a department (there rarely is such a levy), still can, without difficulty, be read as requiring (to use plaintiff's example) in a municipal

tax levy, provision for a veterans pension to be made for the street-cleaning department from which a veteran is retired.

The point therefore comes down to this. If the State is obligated to provide a pension for any person, it must under *N. J. S. A.* 43:4–4 make provision therefor "in the appropriation * * * for the department * * * from which the person shall be retired." In our opinion, as we have said, the Highway Authority, not the State, is the "department" from which plaintiff was retired. But the statute (*N. J. S. A.* 27:12B–5(*r*)) precludes an appropriation to the Highway Authority, and it therefore cannot be said to have been within the intendment of the Legislature that provision for veterans' pensions for its employees be made (*N. J. S. A.* 43:4–4) "in the appropriation * * * for the" Authority. Hence it would appear that the moneys appropriated by *L.* 1953, *p.* 1239 and later acts for such pensions were not appropriated for the benefit of those employees, and defendants are under no obligation to pay plaintiff a pension therefrom.

Plaintiff's complaint was therefore properly dismissed. Affirmed.